MAURINE G. SCOVILLE, APPELLANT, v. LOUIS J. FISHER ET AL., APPELLEES.

149 N. W. 2d 339

Filed March 10, 1967. No. 36434.

Robert G. Scoville, for appellant.

Brogan & Monen and Paul R. Robinson, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, and McCOWN, JJ.

WHITE, C. J.

Plaintiff brings this action is equity to establish a prescriptive easement for ingress and egress and other purposes over defendants' appurtenant town lot in the business section of Hartington, Nebraska. The trial court denied her relief and she appeals. We affirm the judgment.

Defendants own Lot 13, Block 30 of the Original Town of Hartington, 25 feet wide, facing west on Washington Avenue, the main business artery of the town. To the east and rear of their building on this lot is an unimproved and unenclosed (until June 1965) area designated areas A1 and A2 on exhibit 1, which is the subject of dispute in this case. Area A2 is 25 by 27 feet immediately to the south of the building and the adjoining area A1 is 12 by 25 feet stretching east to the north-south alley running to the east of both plaintiff's and defendants' property. Plaintiff owns an area 13 by 25 feet in the northeast corner of Lot 13 on which is located a warehouse. Immediately to the north of defendants' Lot

13 is an open area 52 feet long, east and west, and 12 feet wide which opens into the alley on the east and furnishes access to and abuts the rear of plaintiff's business property. Plaintiff's building, which houses Marge's Cafe on the west and the Chief Bar on the east, faces north and fronts on Fifth Street. The rear doors of the cafe and bar open to the south into the 52 by 12 foot strip which is adjacent to areas A1 and A2 on Lot 13. In June of 1965 the defendants, Fishers, erected a cement block wall about 32 to 36 inches high around the two unenclosed and unimproved areas designated as A1 and A2 thus preventing the plaintiff's use of these areas and precipitating this litigation.

The evidence in this case, mostly on behalf of plaintiff, is practically undisputed. The 52 by 12 foot strip or area immediately to the south and rear of the plaintiff's building furnishes access to it, but it has been convenient to use the adjoining unenclosed and open portion of defendants' lot (areas A1 and A2) for parking, unloading of trucks, deliveries, and the passage of customers to and from the plaintiff's business properties and other businesses in the area. The areas in dispute, A1 and A2, are open and unenclosed, have no defined parts or marks on them, are graveled, and hard packed. For many years beyond the prescriptive period of 10 years they have been used for customer parking and delivering areas, not only to plaintiff's building, but to many other buildings and businesses in the area. Trucks turned, maneuvered, and parked in these areas as they serviced the various businesses in the area. Areas A1 and A2 were used by the plaintiff and anybody who wanted to, and the public used these areas as a parking lot when patronizing plaintiff's business properties, others in the area, or shopping elsewhere in town. Customers and people generally crossed the areas on foot. Plaintiff, her tenants, and their customers used these areas in the same manner. Although there is no evidence of express permission, it is readily and reasonably

inferable that defendants and their predecessors in title permitted this use without objection through the years. And there is no evidence that the plaintiff or any of the people using these areas did so under any claim of right adverse to defendants or their predecessors in title. The only conclusion to be drawn from the evidence is that the various uses by the public, customers of the various businesses, plaintiff, deliverymen, and others were permissive in nature.

Plaintiff's use of the area in question was neither under a claim of right adverse to the defendants or their predecessors in title nor was it exclusive. We shall discuss first the requirement that the use be adverse. The law with relation to this element and with regard to the distinction between an adverse and permissive user is well set out in Stubblefield v. Osborn, 149 Neb. 566, 31 N. W. 2d 547, wherein it is said: " 'An easement by prescription can be acquired only by an adverse user for ten years. Such use must·be open, notorious, exclusive and adverse.' Onstott v. Airdale Ranch and Cattle Co., 129 Neb. 54, 260 N. W. 556. See, also, Omàha & R. V. Ry. Co. v. Rickards, 38 Neb. 847, 57 N. W. 739.

"The use and enjoyment which will give title by prescription to an easement or other incorporeal right is substantially the same in quality and characteristics as the adverse possession which will give title to real estate. It must be adverse, *under a claim of right,* continuous and uninterrupted, open and notorious, *exclusive,* with the knowledge and acquiescence of the owner of the servient tenement, and must continue for the full prescriptive period. See 28 C. J. S., Easements, § 10, p. 645.

" 'A prescriptive right is not looked on with favor by the law, and it is essential that all of the elements of use and enjoyment, stated above, concur in order to create an easement by prescription.' 28 C. J. S., Easements, § 10, p. 645.

" 'A *permissive* use of the land of another, that is a use or license exercised in subordination to the other's

claim and ownership, *is not adverse* and cannot give an easement by prescription no matter how long it may be continued, * * *.' 28 C. J. S., Easements, § 14, p. 655.

"To establish a prescriptive right to an easement, *it must have been exercised under a claim of right. A use by express or implied permission or license cannot ripen into an easement by prescription.* See Sachs v. Toquet, 121 Conn. 60, 183 A. 22, 103 A. L. R. 677." (Emphasis supplied.)

In this case the evidence shows the original use of these areas to have been permissive. There is no evidence that the plaintiff, or any of the many other users, ever informed the defendants or their predecessors in title that they claimed as a matter of right a perpetual easement across defendants' land. The plaintiff, along with many others and the public generally, used and crossed the defendants' land. But there is no evidence that such use was adverse, under a claim of right.

In Stubblefield v. Osborn, *supra,* a somewhat comparable case, in disposing of the contention that the use was presumptively adverse because it was open, continuous, and visible for more than the prescriptive period, we said: "The most that can be said as to their crossing the lands in question is that it was permissive only, a neighborly act on the part of the owners or tenants on the land. There was no claim of ownership on the part of plaintiffs of such a nature that they openly and forcibly asserted directly against the actual owners of the land in such a manner that the owners would be required to take affirmative action against the plaintiffs."

We are not unmindful of the general rule stated in Jurgensen v. Ainscow, 155 Neb. 701, 53 N. W. 2d 196, to the effect that a presumption of adversity arises when there has been open, visible, continuous, and unmolested use for the prescriptive period of 10 years. The same contention was made in Stubblefield v. Osborn, *supra.* The general rule must be interpreted in the light of the facts of each case. In none of the cases cited can we

find a comparable situation to the present case. Here we have unenclosed land with no defined pathway across it and where, paraphrasing Stubblefield v. Osborn, *supra,* the most that can be said of the plaintiff, the public, and the many other various users of the whole area was that their use was permissive only, a neighborly act on the part of the owners or tenants on the land. Applicable here is what this court said in Burk v. Diers, 102 Neb. 721, 169 N. W. 263, as follows: "Oftentimes farmers or owners of city lots, out of mere generosity and neighborly feeling, permit a way over their land to be used, when the entire community knows that the use is permissive only, without thought of dedication or adverse user. This use ought not to deprive the owner of his property, however long continued. Such rule would be a prohibition of all neighborhood accommodations in the way of travel."

We think the proper rule applicable to the facts in this case is well stated in 4 Tiffany, Law of Real Property (3d ed.), § 1196a, p. 565, as follows: "While ordinarily, as above stated, the user of another's land is presumed to be adverse, such a presumption does not exist, it seems, in the case of unenclosed land or, as it may be otherwise expressed, evidence that the land is unenclosed is sufficient to rebut the presumption. And it has been decided that when one throws his land open to the use of the public, or of his neighbors generally a user thereof by a neighboring landowner, however frequent, will be presumed to be permissive and not adverse, in the absence of any attendant circumstances indicative of the contrary."

The rule is stated in 25 Am. Jur. 2d, Easements and Licenses, § 46, p. 457, as follows: "A way may be acquired by one person over the uninclosed land of another by user or prescription, but it generally requires some circumstance or act in addition to, or in connection with, the use of the way to indicate that the use has been claimed as a right and has not been regarded by

the parties merely as a privilege revocable at the pleasure of the owner of the soil."

Closely comparable cases involving city lots or property, supporting this holding, are Allen v. First National Bank of Arvada, 120 Colo. 275, 208 P. 2d 935; Lambert v. Huntsman, 306 Ky. 862, 209 S. W. 2d 709; Anson v. Tietze, 354 Mo. 552, 190 S. W. 2d 193; Clarke v. Clarke, 133 Cal. 667, 66 P. 10. See, also, Jones on Easements, § 270, p. 225; Washburn's Easements and Servitudes (4th ed.), § 86, p. 150; 39 C. J. S., Highways, § 23, p. 942; 28 C. J. S., Easements, § 18d (2), p. 668.

We hold, therefore, that when an owner permits his unenclosed and unimproved land to be used by the public, or by his neighbors generally, a user thereof by a neighboring landowner and others, however frequent, will be presumed to be permissive and not adverse in the absence of any attendant circumstances to the contrary. Defendants' land was unenclosed and plaintiff, other neighbors, and citizens made use of it as a passageway and for the parking and unloading of vehicles when it was convenient to do so. There is no presumption, under these circumstances, of an adverse use and there is no evidence of any claim of right to the use of the property adverse to the defendants. The plaintiff's case must fail on this ground alone.

The evidence also shows that the plaintiff's use was not exclusive within the meaning of the applicable rule. It is obvious from the record that plaintiff's use of the areas was a use she shared with the public generally. Persons shopping in town generally parked their cars there. Deliverymen delivering to all stores in the areas used it. Consumers and customers of all businesses in the areas used it. The use must be exclusive. The general rule is that the use of a way in common to the public is not "exclusive" within the meaning of that term; such use is regarded as negativing a presumption of grant to any individual user. Missionary Soc. of Diocese v. Coutu, 134 Conn. 576, 59 A. 2d 732; Stanley v. Mullins,

187 Va. 193, 45 S. E. 2d 881; Town of Paden City v. Felton, 136 W. Va. 127, 66 S. E. 2d 280; 25 Am. Jur. 2d, Easements and Licenses, § 59, p. 468. In order to establish an independent prescriptive right the individual user must perform some act to the knowledge of the servient owner clearly indicating his individual claim of right. See, 28 C. J. S., Easements, § 15, p. 658, and cases cited in notes 39 and 41; Stanley v. Mullins, *supra;* Town of Paden City v. Felton, *supra;* South Norwalk Lodge v. Palco Hats, Inc., 140 Conn. 370, 100 A. 2d 735; Pirman v. Confer, 273 N. Y. 357, 7 N. E. 2d 262, 111 A. L. R. 216; Annotation, 111 A. L. R. 221; 25 Am. Jur. 2d, Easements and Licenses, § 59, p. 468; 28 C. J. S., Easements, § 15, p. 658.

The term "exclusive" does not mean that the easement must be used by one person only. Jurgensen v. Ainscow, *supra.* But it does mean that the use does not depend on a similar right in others and that it must be exclusive as against the community or public at large. 25 Am. Jur. 2d, Easements and Licenses, § 59, p. 468; 28 C. J. S., Easements, § 15, p. 658; Jurgensen v. Ainscow, *supra.* Here hardly a more nonexclusive use could be found. This unenclosed vacant land was a parking and crossing area used by the public and all neighboring owners and businesses in the area. Plaintiff's right was a similar one to all others using the area and it was mutual, and not exclusive, of others exercising the permissive use of the area permitted by defendants and their predecessors in title. To hold that plaintiff's use in this case was exclusive would be tantamount to eliminating this requirement for the establishment of a prescriptive right. For the reasons given, the district court's findings and judgment are correct and are affirmed.

AFFIRMED.